UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Brandess S.,[1]

Plaintiff,

v.

Commissioner Social Security Administration,

Defendant.

Case No. 1:25-cv-00343-CL

**OPINION AND ORDER**

**CLARKE,** United States Magistrate Judge.

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff Brandess S. seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her application for Supplemental Security Income. The parties consent to the jurisdiction of a magistrate judge. ECF No. 4. The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence. *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Lambert v. Saul*, 980 F.3d 1266, 1270 (9th Cir. 2020)). With that standard of review applied, the Commissioner's

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits.

**BACKGROUND**

More than ten years ago, in July 2016, Plaintiff filed her disability application. Tr. 1301. Since then, Plaintiff has appeared before an administrative law judge ("ALJ") for four administrative hearings, Tr. 36, 55, 95, and 1351, and received three unfavorable written decisions from the ALJ, Tr. 145-59, 10-28, and 1300-17. Now before the Court is the ALJ's November 1, 2024, decision denying Plaintiff's application for disability benefits. Tr. 1300-1317. The dispositive issue is the ALJ's rejection of a treating physician's opinion, and the Court focuses the background and analysis accordingly.

The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, carpal tunnel syndrome status-post left carpal tunnel release surgery in 2022, polyarthralgias[2] versus fibromyalgia,[3] somatic symptom disorder,

---

[2] "Literally, polyarthralgia means pain in several joints." *Pacheco v. Colvin*, No. 12-CV-01279-MSK, 2013 WL 5462297, at *1 (D. Colo. Sept. 30, 2013). "Polyarthralgia causes pain, tenderness, tingling, burning, stiffness, or limited range of motion in the joints but without inflammation." *Cynthia L.H. v. Kijakazi*, No. EDCV 21-1724-JPR, 2023 WL 12144173, at *2 (C.D. Cal. Feb. 22, 2023) (citing Neel Duggal, What is Polyarthralgia?, Healthline, https://www.healthline.com/health/polyarthralgia (updated July 21, 2018)).

[3] Fibromyalgia has a long history of being "poorly understood within much of the medical community." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). The Ninth Circuit explains:

> Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Typical symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms. There are

and mood disorder. Tr. 1302. In making this determination, the ALJ rejected the medical opinion of Plaintiff's treating rheumatologist, Dane Dougherty, MD. Tr. 1314.

Dr. Dougherty began treating Plaintiff in 2017. Tr. 1292. He saw her every four to six months. Tr. 1292, 1296. In January 2021, Dr. Dougherty completed a check-the-box questionnaire titled "Fibromyalgia Residual Functional Capacity Assessment." Tr. 1292.[4] Dr. Dougherty reported that Plaintiff met the American College of Rheumatology criterion for fibromyalgia and that her symptoms were expected to become more severe or worsen over time. Tr. 1292.[5] Confusingly, Dr. Dougherty indicated both that (1) it would not be reasonable to expect that Plaintiff would experience substantial difficulty with stamina, pain, or fatigue while working full-time; and that (2) Plaintiff was incapable of working even a low stress job because of constant and debilitating pain. Tr. 1292-94. Overall, however, Dr. Dougherty opined that Plaintiff's condition caused severe impairments. Dr. Dougherty was asked, "Could your patient do sustained work for 8 hours per day, 5 days per week requiring sitting up to 2 hours and

---

> no laboratory tests to confirm the diagnosis. . . . Therefore, diagnosis of fibromyalgia does not rely on X-rays or MRIs. Further, SSR 12-2P recognizes that the symptoms of fibromyalgia "wax and wane," and that a person may have "bad days and good days." SSR 12-2P, at *6.

*Revels v. Berryhill*, 874 F.3d 648, 656–57 (9th Cir. 2017) (quotation marks, brackets, and citations omitted).

[4] "[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments." *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017).

[5] Social Security Ruling 12-2P "provides two sets of criteria for diagnosing [fibromyalgia], based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria." *Revels*, 874 F.3d at 656. Dr. Dougherty therefore relied on criteria consistent with the Social Security Administration's guidance for diagnosising the condition. The ALJ referenced SSR 12-2P in her written decision. Tr. 1304.

standing up to 6 hours in an 8 hour workday?" Tr. 1292. Dr. Dougherty responded, "Could not sit 2 hours and stand 6 hours." Tr. 1292 (emphasis in original).

When asked to identify the clinical findings, laboratory and test result that show Plaintiff's fibromyalgia, Dr. Dougherty wrote, "multifocal tender points, absence of features of inflammatory arthritis, prominent fatigue, cognitive clouding." Tr. 1292. He reported that Plaintiff's symptoms included multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, irritable bowel syndrome, frequent severe headaches, numbness and tingling, sicca symptoms, Raynaud's phenomenon, breathlessness, anxiety, difficulty concentrating, difficulty remembering, speech problems, and alternating diarrhea constipation. Tr. 1293. Dr. Dougherty reported that Plaintiff experienced pain in the bilateral lumbosacral spine, cervical spine, thoracic spine, shoulders, hand/fingers, and knees. Tr. 1293. Movement, overuse, static position, and stress precipitated Plaintiff's pain. Tr. 1293. Dr. Dougherty noted that Plaintiff's pain was constantly severe enough to interfere with attention and concentration and that she experienced medication side effects of dizziness, upset stomach, and weakness. Tr. 1294.

In Dr. Dougherty's medical opinion, Plaintiff could walk less than twenty feet without severe pain and needing to rest. Tr. 1294. Her legs needed to be elevated at least one foot with prolonged sitting. Tr. 1295. If she had a sedentary job, she would need to have her legs elevated 50% of the workday. Tr. 1295. She could never lift/carry in a competitive work situation. Tr. 1295. She could not perform repetitive handling or fingering and could perform repetitive reaching for only 5% of the time bilaterally. Tr. 1295. She could not stoop or crouch. Tr. 1295. Her impairments were "likely to produce 'good days' and 'bad days,'" but she had "[a]ll bad days." Tr. 1296.

Dr. Dougherty opined that Plaintiff's impairment would result in her missing more than ten workdays per month and that she would need to take a five-minute break from work every five minutes due to constant and debilitating pain and fatigue. Tr. 1295-96. During the administrative hearings, the vocational expert testified that a person who was off task 15 percent or more of the workday or missed more than one day per month on an ongoing basis would be precluded from competitive employment. Tr. 92-93 (December 2020 hearing), Tr. 1373-74 (October 2024 hearing).

In her written decision, the ALJ noted that Dr. Dougherty's opinion was supported by the clinical findings listed in the fibromyalgia assessment. Tr. 1314. However, the ALJ found Dr. Dougherty's opinion "not persuasive" because it was "inconsistent with the overall evidence of record, including [Plaintiff's] longitudinal physical examinations, which support a finding of less extreme limitations (12F/41-42; 39F/2-3; 46F/2)." Tr. 1314.

The ALJ concluded that Plaintiff had polyarthralgias versus fibromyalgia, rejecting Dr. Dougherty's diagnosis and his opinion on the severity of Plaintiff's symptoms. Tr. 1302, 1314. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with some exceptions. Based on the testimony of the vocational expert, the ALJ found that work existed in significant numbers in the national economy, and she concluded that Plaintiff was not disabled as defined in the Social Security Act. Tr. 1316-17.

## DISCUSSION

Plaintiff argues that the ALJ erred in failing to identify specific and legitimate reasons supported by substantial evidence to reject the medical opinion of Plaintiff's treating rheumatologist, Dr. Dougherty, and that this medical opinion should be fully credited as true. The Commissioner responds that the ALJ reasonably rejected Dr. Dougherty's opinion given

inconsistencies with the record evidence. The Commissioner does not, however, address Plaintiff's detailed and well supported argument that the ALJ failed to consider factors beyond supportability and consistency, which was required and particularly important given the specialized nature of diagnosing fibromyalgia. The Court finds that the ALJ failed to follow the required methodology for rejecting the medical opinion of Plaintiff's specialized treating physician.

The parties agree that because Plaintiff filed her claim before March 27, 2017, the ALJ was required to evaluate the medical opinion evidence under 20 C.F.R. § 416.927. Pl.'s Br. at 3 n.2, ECF No. 16; Def.'s Resp. at 11 n.5, ECF No. 18. The Court relies on cases interpreting and applying that legal standard.[6]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Each type of medical opinion is accorded different weight. 20 C.F.R. § 416.927. Generally, more weight is given to the opinion of a treating source than the opinion of a doctor who did not treat the claimant. *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020). Similarly, more weight is given to the opinion of an examining source than to a nonexamining source. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

The ALJ accords "controlling weight" to a treating doctor's uncontroverted opinion based on medically-approved, diagnostic techniques. *See* 20 C.F.R. § 416.927(c)(2); *Revels*, 874 F.3d at 654. "If a treating or examining doctor's opinion is contradicted by another doctor's

---

[6] 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927 are substantively identical and govern how the ALJ must evaluate medical opinions for claims filed before March 27, 2017.

opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Smith v. Kijakazi*, 14 F.4th 1108, 1114 (9th Cir. 2021) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)); 20 C.F.R. § 416.927(c)(2).

As explained by the Administration in Social Security Ruling 96-2p:

> [A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using *all of the factors* provided in 20 C.F.R. 404.1527 [or 416.927]. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (emphasis added) (quoting SSR 96–2p at 4 (Cum. Ed.1996), *available at* 61 Fed.Reg. 34,490, 34,491 (July 2, 1996)); *see Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

When evaluating a treating doctor's contradicted medical opinion, the ALJ is required to consider the (1) nature and extent of the examining or treatment relationship, including length and frequency, (2) supportability, (3) consistency, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.927(c); *Orn*, 495 F.3d at 631.

Here, the ALJ was required to consider these additional specified factors after finding that Dr. Dougherty's opinion was inconsistent with other substantial evidence in the record. The ALJ failed to consider factors beyond supportability and consistency. For example, after summarily concluding that Dr. Dougherty's opinion was "not persuasive" because it was "inconsistent with the overall evidence of record, including [Plaintiff's] longitudinal physical examinations, which support a finding of less extreme limitations," the ALJ cited just five pages of evidence in the record, "(12F/41-42; 39F/2-3; 46F/2)." Tr. 1314. First, the ALJ cited two pages from a February 2017 treatment note from Dr. Dougherty that the ALJ described elsewhere in her written decision as a physical examination showing no more than mild to

moderate findings. Tr. 1314 (citing 12F/41-42 (Tr. 800-01)). The ALJ did not address the nature and extent of Dr. Dougherty's treatment of Plaintiff. Tr. 1292 (Plaintiff visited Dr. Dougherty every four to six months for more than four years). Nor did the ALJ's rejection of Dr. Dougherty's opinion reference the other dozens of pages of Dr. Dougherty's treatment notes documenting Plaintiff's routine visits. *See* Tr. 760-802, 1287-1291.

Next, the ALJ cited two pages from a June 2023 consultative medical examination from Dr. Derek Leinenbach, MD, that the ALJ described elsewhere in her written decision as indicating that Plaintiff had 5/5 motor strength in the bilateral upper extremities and did not indicate Plaintiff as having tender points. Tr. 1315 (citing 39F/2-3 (Tr. 1681-82)). The ALJ did not consider the fact that Dr. Leinenbach, unlike Dr. Dougherty, was a nontreating physician, whose opinion was entitled to lesser weight. *Coleman*, 979 F.3d at 756. The ALJ also failed to explain how Dr. Leinenbach's finding that Plaintiff had "5/5 motor strength in bilateral upper extremities," Tr. 1315, was inconsistent with Dr. Dougherty's fibromyalgia diagnosis, which the Ninth Circuit has described as an "unusual . . . disease [in] that those suffering from it have muscle strength, sensory functions, and reflexes that are normal[,]" yet they suffer greatly from a cycle of pain and fatigue. *Revels*, 874 F.3d at 656 (quotation marks and brackets omitted). The ALJ therefore also failed to consider "other factors" that tend to support a medical opinion. 20 C.F.R. § 416.927(c)(6).

Last, the ALJ cited one page from a December 2023 physical examination by a treating orthopedic FNP, which the ALJ described elsewhere in her written decision as "recent physical examinations not[ing] decreased cervical range of motion, positive Spurling sign on right and left rotation, significant radiating pain down the left arm with lateral flexion of the neck to the right side, and pain on palpation of the cervical spine at C4-5 and C5-6 radiating to the left and right

upper trapezius." Tr. 1315, Tr. 1314 (citing 46F/2 (Tr. 1805)). The ALJ did not explain how this description of the physical examination shows a less severe limitation than Dr. Dougherty's opinion.

In addition, the ALJ did not give special consideration to Dr. Dougherty's status as a treating specialist. 20 C.F.R. § 416.927(c)(5). "[A] rheumatologist's specialized knowledge is 'particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community.'" *Revels*, 874 F.3d at 664 (quoting *Benecke*, 379 F.3d at 594 n.4). Under the applicable legal standard, the Ninth Circuit has "given a rheumatologist's opinion of a claimant's fibromyalgia 'greater weight than those of the other physicians because it is an opinion of a specialist about medical issues related to his or her area of specialty.'" *Id.* (quoting *Benecke*, 379 F.3d at 594 n.4).

In summary, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence to reject Dr. Dougherty's medical opinion. The ALJ failed to follow the appropriate methodology for weighting a treating physician's medical opinion. "This failure alone constitutes reversible legal error." *Trevizo*, 871 F.3d at 676. The record has been fully developed, and further proceedings would serve no useful purpose. Allowing the Commissioner to decide the issue again would create the precise "unfair 'heads we win; tails, let's play again' system of disability benefits adjudication" disfavored in the Ninth Circuit. *See Benecke*, 379 F.3d at 595. Because the vocational expert testified that a claimant with the physical limitations outlined in Dr. Dougherty's medical opinion would be unable to do any full-time work, Tr. 92-93, 51, 1373-74, Dr. Dougherty's opinion "*alone* establishes that [Plaintiff] is entitled to benefits." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 n.12 (9th Cir. 2007).

The ALJ erred in finding Dr. Dougherty's opinion not persuasive and the Court credits his opinion as true. The Court declines to rule on Plaintiff's additional assignments of error and remands for the immediate calculation and payment of benefits.

**CONCLUSION**

The Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits.

DATED this 18 day of November, 2026.

MARK D. CLARKE
United States Magistrate Judge